THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUND ENERGY,<br><br>  Petitioner,<br><br> v.<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 77,<br><br>  Respondent. | CASE NO. C24-1483-JCC<br><br>ORDER |

This matter comes before the Court on Puget Sound Energy's ("PSE") and the International Brotherhood of Electrical Workers, Local No. 77's ("Union") cross-motions for summary judgment (Dkt. Nos. 12, 14). Having thoroughly considered the briefing and the record, and finding oral argument unnecessary,[1] the Court GRANTS in part and DENIES in part each motion as explained herein.

## I.   BACKGROUND

The motions follow PSE's petition (Dkt. No. 1) to partly vacate an arbitration award. (*See* Dkt. No. 1-1 at 250–62.) That proceeding stems from a disagreement between PSE and the Union as to the propriety of PSE's termination of its employee, Dustin Smith. (*Id.* at 171, 184.)

---

[1] Such argument is unnecessary because each party has had a full opportunity to brief issues presented in their motions. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1   Following Mr. Smith's termination, the Union sought to utilize the grievance resolution process
2   afforded by the collective bargaining agreement ("CBA"). (*See id.* at 117–20.) This dispute is
3   somewhat unique, though, as the parties disagree as to whether the Union timely initiated the
4   second of the three steps in the CBA's Section 14 grievance procedure. (*Compare id.* at 178,
5   *with id.* at 179–80.)

6   To summarize the grievance procedure (as described in CBA Section 14.2), step one
7   involves oral notification of the grievance, step two contemplates a written dialogue, and step
8   three is a meeting between the two sides. (*See id.* at 117–18.) However, timely notification is
9   required to transition from one step to the next—the grievance does not advance automatically.
10  (*See id.* at 117–18.) The time limit for each step is generally 21 days. (*Id.*) However, Section
11  14.3(c) may extend a time limit by ten days upon written notice. (*Id.* at 118.) That Section also
12  provides that if a party fails to meet relevant grievance procedure time limits, it "forfeits the
13  grievance." (*Id.*) In other words, if the time limit expires, the grievance is procedurally barred.
14  (*Id.*) Finally, per CBA Section 14.4, arbitration only occurs "[i]f resolution is not reached"
15  through the grievance process. (Dkt. No. 1-1 at 119.)

16  The specific provision before the arbitrator here involved step two. It indicates "[i]f
17  resolution is not reached through Step One, the grievance will be reduced to writing" and
18  "submitted . . . to a [PSE] representative within twenty-one (21) calendar days of Step One." (*Id.*
19  at 117). Here, it is uncontroverted that the Union presented its step one notification to PSE on
20  March 6, 2023. (*Id.* at 185–86.) Yet the Union did not then notify PSE of its intent to proceed to
21  step two until March 31, 2023 (some 25 days later). (*Id.* at 185–86.) Because this exceeded 21
22  days, PSE insists the Union failed to timely meet the CBA's notice requirements and, thus,
23  forfeited the grievance. (*Id.* at 179–80.)

24  As timeliness is a threshold issue, the parties elected to bifurcate arbitration and, at least
25  initially, deal with forfeiture alone. (*See* Dkt. No. 13-1 at 2.) They briefed only this issue. (Dkt.
26  No. 1-1 at 264–90.) And they provided Arbitrator Catherine Harris with a stipulated record on

this issue—nothing more. (*Id.* at 165–248.)² Based on the submissions, the arbitrator ruled as follows:

> - [The Union] failed to advance the grievance to Step Two within the time limit explicitly set forth in Section 14.2 of the [CBA].
> - Due to written notification to PSE in accord with Section 14.3 ( c ), the time limit for the filing of the Step Two grievance was extended for ten calendar days.
> - The grievance is procedurally arbitrable and shall proceed to a hearing on the merits.
> - The arbitrator retains jurisdiction to determine the merits of the grievance.

(*Id.* at 262.)

PSE disagrees with all but the first ruling (that the Union failed to comply with the time limit provided in CBA Section 14.2). (*See generally* Dkt. No. 1.) In moving for summary judgment, PSE argues Arbitrator Harris exceeded her authority and badly misinterpreted the CBA. (Dkt. No. 12 at 14–22.) Thus, this Court should vacate all but her first ruling. (*Id.*) The Union, of course, argues otherwise and asks the Court to confirm and enforce the award in its entirety. (Dkt. No. 14 at 9–26.)

## II.   DISCUSSION

### A.   Legal Standard - Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if the fact "might affect the outcome of the suit under the governing law." *Id.* At the summary judgment stage, evidence must be viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

Here, there are few disputed facts (largely because the parties submitted a stipulated

---

² They also waived a hearing and the presentation of further evidence. (*See* Dkt. No. 1-1 at 250).

record to Arbitrator Harris). (*See* Dkt. No. 1-1 at 165–248.) Thus, the motions raise primarily legal issues. (*See generally* Dkt. Nos. 12, 14.)

### B. Validity of Arbitration Award

Based on Section 301 of the Labor Management Relations Act, the Court has jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a); *see, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001). Section 301 also empowers the Court to review an arbitration conducted under the terms of a collective bargaining agreement. *Id.*

Nevertheless, the Court can only vacate an arbitrator's award (a) where the arbitrator "exceeds the boundaries of the issues submitted," (b) the award "does not draw its essence from the [CBA] and the arbitrator is dispensing his own brand of industrial justice," (c) when it is "contrary to public policy," or (d) when it is "procured by fraud." *S. Cal. Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792–93 (9th Cir. 2001). The "burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

PSE, in challenging the arbitration award here, focuses on two of the four legal bases supporting vacatur, namely that the arbitrator exceeded her authority and did not draw from the essence of the CBA. (Dkt. No. 12 at 14–22.) Specifically, PSE makes the following arguments: (1) when Arbitrator Harris looked beyond CBA Section 14.2 (and applied the Section 14.3 ten-day extension), she addressed issues not submitted to arbitration; (2) her interpretation of Section 14.3(c) is so contrary to its express terms it does not draw its essence from the CBA; and, finally, (3) she was not authorized to retain jurisdiction as to this matter's merits, even if she found the grievance not forfeited. (*Id.*) The Court addresses each argument (in turn) below.

#### 1. Application of CBA Section 14.3

PSE contends that Arbitrator Harris exceeded her authority in considering the import of CBA Section 14.3(c)'s ten-day extension provision because the parties jointly submitted to

arbitration only the interpretation and application of CBA Section 14.2—nothing more. (*See, e.g.*, Dkt. Nos. 1 at 3, 9; 12 at 15, 17, 18.) As such, PSE argues the issue of *timeliness* more broadly was not before the arbitrator. (*Id.*) This makes no sense.

CBA Section 14.2 cannot be applied in a vacuum. It does not contain all CBA language controlling the grievance process. Indeed, without the first sentence of Section 14.3(c), establishing that an untimely grievance is forfeited, (Dkt. No. 1-1 at 118) (a "party forfeits the grievance" if it "fails to mee the allotted time limit[]"), PSE would have no anchor for its current argument: that Mr. Smith's grievance is untimely and thus forfeited. (*See, e.g.*, Dkt. No. 12 at 19–20.) PSE cannot cherry pick what portions of the CBA are relevant to the question at hand. As a matter of logic, the arbitrator was right to consider the import of *all* relevant portions, including the ten-day extension contained within the same section as the forfeiture provision.

Moreover, the record suggests Arbitrator Harris did, in fact, exactly what the parties tasked her with. This is borne out by their stipulation of facts, which indicates as follows: "The singular alleged procedural failure at issue is the *timeliness* of the Union's advancement of the grievance to Step 2." (Dkt. No. 1-1 at 186) (emphasis added). Of course, one cannot determine the *timeliness* of a grievance without considering all CBA provisions that impact the issue. This includes the Section 14.3(c) extension procedure. To do otherwise would, frankly, be absurd. PSE argues consideration of anything beyond Section 14.2 is fundamentally unfair because the parties did not discuss the import of the Section 14.3(c) extension provision prior to arbitration, nor, during arbitration, did PSE brief the matter or work with the Union to develop a record as to past practice on this issue. (*See, e.g.*, Dkt. No. 12 at 17–18.) While this is unfortunate, it does not mean that Arbitrator Harris acted outside the scope of her engagement. The provision is clearly applicable and relevant to the question before her—the timeliness of the Union's grievance.

Arbitrator Harris did not exceed her authority when considering the import of CBA Section 14.3. Summary judgment is warranted to the Union on this issue.

2.  Interpretation of CBA Section 14.3

PSE next argues that, even if the arbitrator was right to apply CBA Section 14.3, her interpretation is so flawed that the resulting ruling must be vacated. Namely, she should have found that Section 14.3(c) extension implicitly required its invocation prior to the end of the 21-day notice period described in Section 14.2. (Dkt. No. 12 at 20.) It is undisputed that the Union did not invoke such an extension within the 21-day period here. (Dkt. No. 1-1 at 184–86.) However, PSE's argument strains the deference due from this Court to the arbitrator's ruling.

An award should not be vacated simply due to an arbitrator's "erroneousness factual findings or legal conclusions." *Sheet Metal Workers Intern. Ass'n, Loc. No. 359, AFL-CIO v. Arizona Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988). "Because of the centrality of the arbitration process to stable collective bargaining relationships, courts reviewing labor arbitration awards afford a nearly unparalleled degree of deference to the arbitrator's decision." *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 530 (9th Cir. 2016) (internal citation and quotation marks omitted).

The arbitrator's award need only "draw its essence" from the contract at issue. *Sprewell*, 266 F.3d at 986.[3] This is a low bar. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority" there is no "serious error." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

The full text of CBA Section 14.3(c) is as follows:

> If the Employee, Union, or the Company fails to meet the allotted time limits in Steps One, Two, or Three that party forfeits the grievance. Any time limits stipulated in the grievance procedure may be extended for up to ten (10) calendar days with a written notification to the other party.

(*Id.* at 118.)

---

[3] Failing to do so occurs when the arbitrator "ignore[s] the plain language of the contract" or "[i]f, on its face, the award represents a[n] [im]plausible interpretation of the contract." *Sprewell*, 266 F.3d at 986; *Sheet Metal Workers Intern. Ass'n, Loc. No. 359, AFL-CIO v. Arizona Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988).

Again, it is undisputed here the Union did not seek the Section 14.3(c) extension during the Section 14.2 notification period. (*See* Dkt. No. 1-1 at 185–86.) On March 31, 2023, some 25 days after the Union initiated step one (so 4 days after expiration of the 21-day notice period), it provided written notice to PSE that it sought to "advance[] [Mr. Smith's grievance] to the second step of the grievance procedure in Article XIV off the collective bargaining agreement." (*Id.* at 175.) Arbitrator Harris found this notice sufficient to trigger the extension provision because CBA Section 14.3(c) "does not provide a deadline for the written notification [of an extension] nor does it state that the written notification must be filed *prior* to initiating the Step Two filing." (*Id.* at 260.) And as the arbitrator notes, she "is not empowered to add more specific or detailed requirements to the existing contract language." (*Id.* at 261.) Thus, she found no such requirement exists. Nevertheless, PSE suggests Arbitrator Harris should have implied one. And by not doing so, the arbitrator issued an "illogical" decision that renders the Section 14.2 notice time period "meaningless." (Dkt. No. 12 at 20.) The Court disagrees.

Arbitrator Harris applied the CBA's plain language (or lack thereof) to the facts of this case. To the extent PSE is dissatisfied with the result (and by extension the CBA's language), it is free to renegotiate and revise the CBA or address the issue when entering into the next CBA. But in the meantime, it is stuck with the CBA as-is. And the Court will not second guess the arbitrator's interpretation of it absent ignorance or implausibility on her part.

In sum, Arbitrator Harris drew from the CBA's essence in interpreting and applying Section 14.3. Summary judgment is warranted to the Union on this issue.

3. <u>Retaining Jurisdiction Over the Merits</u>

Finally, PSE contends Arbitrator Harris also exceeded her authority when she retained jurisdiction of the merits in this matter. (Dkt. No. 12 at 22.) At issue is whether the parties agreed to put this question to Arbitrator Harris prior to entering into arbitration (or just the procedural question). To resolve this issue, unlike those above, the Court must look beyond the stipulated record and the CBA.

As to the evidence, PSE submits a declaration from its counsel attesting that they told the Union, prior to arbitration, "that PSE would consent to using Arbitrator Harris for the procedural issue only and that PSE would reserve its right to select a different arbitrator should a merits hearing be necessary," along with a separate declaration attesting that "the parties did not agree to submit the merits of their dispute to Arbitrator Harris's jurisdiction." (Dkt. Nos. 13 at 1, 18 at 1.) The declarations are supported by exhibits containing an e-mail from the Union to the arbitrator indicating that the parties agreed to a "bifurcated approach in separate hearings" and an e-mail between the Union and PSE's counsel where they indicate they need to discuss with the "client" (PSE) whether it is willing to use the same arbitrator on both issues. (Dkt. Nos. 13-1 at 2, 18 at 5.) While the e-mails are open to interpretation, the attestations are not. And in response, the Union simply points to the arbitrator's engagement letter, which indicated "[i]f the case moves forward to a hearing on the merits, these same terms will apply." (Dkt. No. 15 at 16.) Thus, at least some of PSE's evidence squarely addresses the issue of what the parties agreed to, while none of the Union's does.[4]

The Union fails to establish a genuine issue of fact as to whether the parties agreed to utilize Arbitrator Harris for the merits determination. Summary judgment is warranted to PSE on this issue.[5]

### III.   CONCLUSION

For the foregoing reasons, the parties' motions are GRANTED in part and DENIED in part. The Court VACATES Arbitrator Harris's final ruling retaining jurisdiction to determine the merits of the grievance and CONFIRMS the remaining rulings.

---

[4] The weight of the evidence is beyond the scope of a summary judgment motion. *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

[5] In its briefing to the Court, the Union indicated that it is "amenable to using a different arbitrator for the merits." (Dkt. No. 19 at 14.) Because of the conditional nature of this statement, the Court does not consider it sufficient to constitute a concession of the issue (thereby rendering it moot). Therefore, the Court makes the affirmative ruling herein.

1  DATED this 8th day of May 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE